## PANOLA COUNTY *v.* TOWN OF SARDIS.

(In Banc. Nov. 19, 1934.)

[157 So. 579. No. 31220.]

Jno. **W. Kyle,** of Sardis, and **Creekmore & Creekmore,** of Jackson, for appellant.

492

James McClure, Jr., of Sardis, for appellee.

494

Argued orally by **H. H. Creekmore** and **Jno. W. Kyle,** for appellant, and **W. A. Henry, James McClure** and **Herbert Holmes,** for appellee.

**Ethridge, J.,** delivered the opinion of the court.

This is an appeal by Panola county from a judgment rendered in the circuit court for five thousand seven hundred two dollars and sixty-eight cents and costs, in favor of the town of Sardis. The plaintiff, an incorporated municipality which worked its streets at its own expense, filed a claim against the county for one-half of the ad valorem tax levied for bridge purposes throughout the county, the latter having a separate levy from the separate road districts of the county, consisting of three separate road districts embracing the several beats or supervisors' districts, and two districts of the county having a joint separate road district composed of the two beats. This claim covered the years 1920 to 1930, both inclusive. The amount of the levy varied from time to time, but at the time of the filing of the suit, the total funds in the county treasury account of bridges amounted to forty-six thousand two hundred forty-one dollars and thirty-nine cents. The record shows the amount of the tax collected for the bridge fund, and the amount expended each year. The municipality had filed a claim for a division of the road funds for the district in which the municipality was situated each year, and the board of supervisors had made the allowance for one-half of the road funds levied upon the property within the municipality for road purposes under the separate road district levy. The court below rendered judgment for the years 1930, 1931, and 1932, but denied recovery for the years 1920 to 1930.

It appears from the record that the municipality undertook to give notice of its purpose to claim one-half of the ad valorem taxes for road purposes, under chapter 232, Laws 1920, on the 13th day of October, 1920. The regular meeting of the municipal board was on the 5th day of October, 1920, and it adjourned to the following

day, on which day, and at the end of that meeting, they entered an order on the minutes, reciting: "On account of the personal tax roll being in Jackson, Mississippi, for inspection this meeting was continued to take up the equalization of personal roll. N. B. Lavender, Clerk, T. J. Taylor, Mayor." No date was fixed for the meeting in the order, for the reassembling of the board, or any other purpose, and none other than the purpose of equalizing the personal roll was shown. The resolution notifying the county of the purpose of the municipality to claim one-half of the ad valorem road tax was made on the 13th, when the board undertook to reassemble. There was no notice served, in compliance with the statute, calling any special meeting for any special purpose, and the validity of the order of the board making the said claim was challenged, this being the only order attempted to be passed by the municipality prior to the filing of the suit in 1933.

The municipality filed a cross-appeal, and assigned as error that the court below erred in not allowing one-half of the bridge funds collected under the bridge separate levy for each of the years from 1920 to 1932, inclusive. The board levied in ad valorem road tax for each of the said districts, and in the same order levied a separate levy for bridge purposes throughout the county.

Many questions are raised and argued in the case, but we find it only necessary to deal with one of them in this opinion. During all the years involved in this litigation Panola county worked its public roads under the provisions of chapter 150, Laws 1910, as amended in subsequent acts, chapters 257, 258, Laws 1912, chapters 172, 177, Laws 1916, chapter 276, Laws 1920, and chapter 157, Laws 1928. As to the years from 1928 to 1932, inclusive, we find under chapter 157, Laws 1928, in section 2 of the act, that "the board of supervisors may raise funds for working, constructing, and maintaining public roads or

building bridges, as provided in this act, by a commutation tax of five dollars ($5.00) on all persons subject to road duty, by an ad valorem tax on all assessed taxable property in the county or supervisor's district or districts, or by an acreage tax, or by a bond issue, or by any or all of said methods.''

Under this provision of the statute the board levied the road district funds above referred to, and, as stated above, allowed to the municipality one-half thereof. In the same section of chapter 157, Laws 1928, it is provided: ''Ad valorem levies may be made for bridges and culverts. In counties operating under the provisions of this act, where the funds derived from the annual tax levies for road work, construction and maintenance are kept separate for each or any of the several supervisors' districts, the board of supervisors may, in its discretion, levy annually an ad valorem tax on all taxable property of the county, to be used for constructing and maintaining the bridges and culverts on the public roads throughout the county.''

Taking section 2, and construing all its provisions, we think it is manifest that the part last quoted was intended to provide that where the board levied a tax for bridge purposes, such tax could only be used for the purpose of building bridges and culverts, and for no other purpose, in the absence of an enabling statute authorizing the board to use the funds for some other purpose. It was not the legislative purpose, in authorizing this to be done under this chapter, to give the municipality one-half of this fund. The provisions of chapter 232, Laws 1920, were intended to apply to funds raised for road purposes, but not for bridges, where the bridges were maintained by a fund levied under the provisions last quoted.

We think this principle is established in the case of Board of Sup'rs of Lauderdale County v. Meridian, 149

Miss. 139, 114 So. 803. Therefore, the court below was in error in rendering judgment against the county for the years 1930, 1931, and 1932.

It is contended that this case is controlled by the announcement of the court in the case of Gully v. Attala County, 165 Miss. 86, 145 So. 907, and other cases hereinafter discussed. In Gully v. Attala County, supra, the levy made by the board read: "Four mills on each dollar of valuation for county road and bridge fund to defray the expenses of building bridges and maintaining the same and building and maintaining roads for the county." It will be noted from this levy that it does not fall under the provisions of chapter 157, Laws 1928, last quoted from. There the road and bridge funds were one and the same; the county could use the fund either for general road working or for building bridges or for both. It could apportion the amounts between general road work and bridge building; and it was manifest that this levy gave the town of Sallis, the municipality on whose behalf the suit was brought, one-half of the ad valorem so levied upon property within the confines of the municipality. We do not think this case is authority for sustaining the judgment against the county in this case.

Likewise, in the case of Grenada County v. City of Grenada, 168 Miss. 68, 150 So. 655, the county levied and collected taxes upon property in the city for road and bridge purposes. Practically the same order and the same questions were raised in this case as in Gully v. Attala County, supra. In Gully, v. Board of Supervisors of Copiah County, 167 Miss. 562, 147 So. 300, it appears that the tax there involved was levied for road purposes.

In Town of Purvis v. Lamar County, 161 Miss. 454, 137 So. 323, the money there involved was secured for road purposes, and was not a levy made for bridges; so

that case is not authority for sustaining the judgment rendered against the county here involved.

It is true, as stated in these cases, that administrative authorities cannot, by an administrative device, deprive the municipality of its one-half of the taxes collected for roads and bridges. All these cases were properly decided on their facts, and are distinguishable from the case here. We think, therefore, it was error for the court to render judgment for the city against the county.

As to the cross-appeal of the municipality, involving the taxes prior to the enactment of chapter 157, Laws 1928, we are to inquire whether the board had authority to levy a special bridge tax under previous laws for the use of bridges and culverts, and whether the municipality would be entitled to one-half of the taxes levied and collected for bridge purposes, as was here levied through all these years, without the municipality being entitled to share therein. This inquiry will involve a consideration of a number of statutes.

Section 214, Code 1930, giving general jurisdiction to the board of supervisors, reads as follows:

"The boards of supervisors shall have within their respective counties full jurisdiction over roads, ferries, and bridges, except as otherwise provided by section 170 of the Constitution and all other matters of county police. They shall have jurisdiction over the subject of paupers; they shall have power to levy such taxes as may be necessary to meet the demands of their respective counties, upon such persons and property as are subject to state taxes for the time being, not exceeding the limits that may be prescribed by law; they shall cause to be erected and kept in good repair, in their respective counties, and in each judicial district thereof, a good and convenient courthouse and a jail; and they shall have and exercise such further powers as are or shall be conferred upon them by law."

This section, in its present form, has come down through many prior codes. Section 256, Code 1930, authorizing the board of supervisors to appropriate the money that may come into the county treasury, reads as follows:

"The board of supervisors shall direct the appropriation of money that may come into the county treasury, but shall not appropriate the same to an object not authorized by law."

This section of the law has appeared in former codes substantially in its present form; and in our opinion it has not been modified or repealed by any chapters on special road systems contained in the statutes from 1920 up to the present time. These statutes give to the board of supervisors very comprehensive powers, and, in our opinion, where not modified or amended by other sections, authorize it to levy taxes not only for general purposes, but the board has the power to apportion the taxes levied to various objects with which the board is authorized to deal; and to expend county money in carrying forward purposes authorized by statute. Under section 214, Code 1930, in the absence of restrictions by other statutes, we think the board could levy a specific tax for the support of paupers, another for the building of bridges, another for carrying on schools, another for courthouse and jail, another for the expenditure of the courts, etc. In other words, they have the power, under this section, to levy a specific tax for a specific purpose, by an order entered upon their minutes to that effect, where the purpose is authorized by law. Boards of supervisors have constitutional jurisdiction over roads, ferries, and bridges by section 170 of the Constitution, which reads as follows:

"Each county shall be divided into five districts, a resident freeholder of each district shall be selected, in the manner prescribed by law, and the five so chosen

shall constitute the board of supervisors of the county, a majority of whom may transact business. The board of supervisors shall have full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, and perform such other duties as may be required by law; provided, however, that the legislature may have the power to designate certain highways as 'state highways,' and place such highways under the control and supervision of the state highway commission, for construction and maintenance. The clerk of the chancery court shall be the clerk of the board of supervisors."

This jurisdiction over roads, ferries, and bridges must be exercised under such regulations as the Legislature may prescribe; but it is not within the power of the Legislature to entirely destroy such jurisdiction of the board of supervisors.

Another constitutional section affecting road laws is section 85 of the Constitution, which reads as follows:

"The legislature shall provide by general law for the working of public roads by contract or by county prisoners, or both. Such law may be put in operation only by a vote of the board of supervisors in those counties where it may be desirable."

There are many sections of the present Code dealing with the power of the supervisors to build bridges. See sections 6311, 6330, 6349, 6350, 6351, 6352, 6354, 6355, 6381 (as amended by Laws 1932, chapter 196), 6385, 6392, 6451 (as amended by Laws 1932, chapter 176). Wherever the county is given authority to build bridges, and the special statute or act does not provide for a specific tax or fund from which to pay for such bridge, the board, under section 214 of the Code, supra, may levy a tax upon the property of the county to pay for the same, and may appropriate the money for that purpose. The statutes authorizing the board to build

bridges and causeways have existed for many years prior to the enactment of the special road laws authorizing the public work of road and bridge building under special systems. See Rev. Code 1857, chap. 15, art. 38; Chapter 53, art. 8, Rev. Code 1871; Code 1880, chap. 23, secs. 868, 869, 870, 871; chapter 117, Code 1892, sec. 3937; chapter 123, Code 1906, secs. 4433 and 4449.

It is manifest from a study of the various sections dealing with roads and bridges, and the levy and disbursement of taxes, that the Legislature did not intend for levies specially made for bridge purposes to be divided between the municipality and the county, under chapter 232, Laws 1920. This view is strengthened when we consider the situation in many counties, and in many of the supervisors' districts in the several counties. Many of the counties and supervisors' districts have large or numerous streams which must be bridged. Often these supervisors' districts through which the streams flow have a sparse population and low property values. Other supervisors' districts in the same counties may have few streams, large populations, and high property values. In such case it would be a great burden and difficulty to build the necessary bridges over large streams in the sparsely settled and poorer districts; and that these bridges should be built at the expense of the property of the entire county is manifestly for the general welfare. The Legislature must have had this in mind in enacting the various laws creating special road districts in the supervisors' districts or for parts of one or two or more districts. No doubt it was the purpose of the Legislature to leave in the board of supervisors the power, at their option, to build the bridges, separate and apart from the working of the roads, under the varied systems provided therefor. And it is a familiar rule of statutory construction that repeals by implication are not favored. We are satisfied that it was not

the purpose of the Legislature to deprive the board of the power, under section 214 of the Code, to levy a county-wide bridge tax, to be used only for the purpose of building bridges and culverts, or bridges alone. It accords with the constitutional policy of creating a board of supervisors, and giving them jurisdiction over roads, bridges, and ferries, leaving to their judgment and discretion the dealing with this matter, under regulations to be provided by law; and applying the statutes on the subject, and considering them together, as indicating the general policy, we think it was the legislative intention that the board of supervisors should have the power to separate bridge building from the general working of roads. See Greaves v. Hinds Co., 166 Miss. 89, 145 So. 900. While it is true, in one sense, that a bridge is part of a highway, and an essential part, still it is within the power of a board of supervisors to levy a special tax to be used only in building bridges and culverts, or bridges; and where this has been done, as in the present case, municipalities are not entitled to share in special bridge funds collected under such separate levies. We therefore think the court below was correct in denying recovery for the years 1920 to 1929, inclusive.

Chapter 129, Laws 1928, ratified and approved all payments theretofore made to municipalities, under the provisions of chapter 232, Laws 1920; and the acts of the board made between 1920 and 1929 in making such allowances were thereby ratified. The ratification makes it immaterial, as to such funds, whether the board properly allowed them or not, or whether the municipality rightfully claimed them or not.

We find no reversible error on the cross-appeal; therefore the judgment on direct appeal is reversed, and the suit is dismissed. The judgment on cross-appeal was correct.

Reversed and dismissed.

· **Griffith, J.,** delivered an opinion specially concurring.

While I am in agreement with the majority that, in counties where the funds for road work are derived from separate levies in, and are separately kept for, each of the supervisors' districts, the special county-wide bridge funds, budgeted as such and therefore not transferable, levied and collected under the second paragraph of section 2, chapter 157, Laws 1928, approved April 16, 1928, brought forward as section 6392, Code 1930, are thereby withdrawn from the provisions of chapter 232, Laws 1920, I am unable to follow the reasoning of the majority as to the bridge funds prior to April 16, 1928.

However, under chapter 129, Laws 1928, approved also on April 16, 1928, the municipality is not entitled to any road or bridge funds except those then on hand unexpended and unappropriated. The record fails to show that there was any balance of this bridge fund on hand on April 16, 1928. All that the record shows is that there was a balance on hand of eleven thousand eight hundred sixty-six dollars and three cents on September 30, 1927, and a balance on hand September 30, 1928, of fifteen thousand two hundred twenty-six dollars and sixty-five cents; so that we can only surmise or conjecture that there was any balance on hand on April 16, 1928, or, if so, what was the amount of it, and as to whether on that date any balance, even if on hand, was unappropriated. The result is that I concur in the judgment ordered by the majority; but as to the funds previous to April 16, 1928, on a different ground from that relied on in the majority opinion.

**Chief Justice Smith** requests that it be stated that he concurs in the two foregoing paragraphs.