CITY OF CRYSTAL SPRINGS *v.* COPIAH COUNTY.

In Banc. Oct. 10, 1949.

No. 37193   (42 So. (2d) 188)

W. D. Conn, Jr., for appellant.

Henley, Jones & Woodliff, for appellee.

**Smith, J.**

This case comes to us from a final decree dismissing appellant's original bill of complaint, upon its refusal to plead further after the Chancery Court had sustained a general demurrer. Therefore we must have recourse to the averments of the bill for the facts on which appellant relies to sustain its contention.

The bill of complaint was filed by appellant, the City of Crystal Springs, in the Chancery Court seeking to obtain from Copiah County one-half of the ad valorem "road and bridge taxes collected on property situated in the municipality for the years 1940-1946", to quote from appellant's brief. On the other hand, it is stated in appellee's brief that appellant is "seeking to recover $22,698.38 alleged to be the municipality's share of ad valorem taxes collected for bridge purposes by the County for the years 1940 to 1945 inclusive".

The specific prayer of the original bill is, "1. That the Board of Supervisors of Copiah County be held to have made its annual levy for 'bridges' as an annual ad valorem levy for general road and bridge purposes pursuant to the provisions of Section 6390, Mississippi Code 1930, and the same section as brought forward in the Mississippi Code of 1942 as Section 8358; and that the proceeds of such levies for the years 1940, 1941, 1942,

1943, 1944, 1945 and 1946 were part and parcel of the general road and bridge funds of the county; 2. That complainant be decreed to be entitled to one-half of all such taxes collected on property situated within its corporate limits for the years herein above mentioned; and that it shall have a decree adjudging that complainant do have and recover of and from defendant one-half of all such ad valorem taxes collected for said years on property within the corporate limits of complainant and in the total sum of $26,904.55 with lawful interest thereon from the respective due dates'', together with costs. And general relief.

The original bill charges that appellant is a Code municipality in the Fifth Supervisor's District of Copiah County, and that its streets have been and are worked at the expense of the City Treasury, and by municipal authority. On December 4th, 1928, the Board of Mayor and Aldermen regularly adopted a resolution notifying Copiah County Board of Supervisors to that effect and that it would claim one-half of the ad valorem taxes assessed and collected for road purposes by the county on property situated in the City of Crystal Springs for the fiscal year 1928-1929 and each year thereafter. It was further averred that a certified copy of this resolution or order was immediately served on the board of supervisors and has not since been amended or appealed. Payments were made accordingly prior to the year 1940.

It was also alleged by the complainant that the appellee County ''maintains its roads and bridges out of funds derived from an annual ad valorem tax levy on the taxable property of the county, and from gasoline taxes and motor vehicle fees apportioned and allocated to the county by state authority, and motor vehicle fees collected by the tax collector of the county''.

A copy of the municipal resolution served on the board of supervisors is filed as an exhibit to the bill of complaint. So are ''copies of the tax levy for each of the

years above referred to, as published by the clerk of the said Board of Supervisors as required by Section 9890, Code of 1942, (Section 3228, Code of 1930) . . . and made a part 'hereof''.

Turning to the exhibited tax levies we find that each of them contains the following levy: ''Bridges'', so many mills. None of them contain any levy for ''roads'', except that for 1946-1947, which particular claim was never submitted to the Board of Supervisors for payment.

There is set forth in the original bill a detailed and itemized statement of the amounts collected by the County from its ad valorem taxation of the property in appellant's corporate limits for the years 1940, 1941, 1942, 1943, 1944 and 1945, with one-half thereof claimed as due the City of Crystal Springs.

However, complainant concedes that for the years 1940, 1941, 1942, 1943, and 1944, that the only ad valorem tax levy for ''road and bridge'' (as it is put in its brief) purposes made by the board of supervisors was a county wide levy for the maintenance and construction of bridges, furthermore averring that for 1945 it was only for bridges; that from 1940 to 1944 such funds were set up on the county's books separately as ''Bridge Funds'', but were used indiscriminately for general road purposes along with other road funds; and in 1945 this separate account was discontinued and commingled such collections with other road and bridge funds, making no effort to use them exclusively for bridge purposes.

It is then charged that Section 6390, Code 1930, Section 8358, Code 1942, required the board of supervisors to levy an annual ad valorem tax for road and bridge purposes. The position is then taken in its bill that ''since only one ad valorem tax levy for any road purpose has been annually made, during the years herein mentioned, by said board of supervisors, complainant charges that said board should be held to have made such annual

levies under the mandatory statute referred to and the complainant has become and is entitled to recover of and from defendant one-half of all such taxes collected on property situated in said municipality, in accordance with the order of the Mayor and Board of Aldermen of Crystal Springs dated December 4, 1928, Exhibit A hereto, and the provisions of Section 6417, Mississippi Code 1930, and Section 8367, Mississippi Code of 1942.''

In view of the intricate, albeit intriguing, complaint of the appellant it is believed to be helpful to quote its averments, charging appellees with a fraudulent scheme to deprive the municipality of its share of the ad valorem taxes at issue. Says the appellant: ''Complainant further charges that the board of supervisors aforesaid and for the years aforesaid has undertaken to defeat the right of complainant to its part of the taxes collected for road purposes which were assessed against property within its corporate limits by refusing to make any tax levy annually for road purposes in name, but has such levy in each year by referring to the levy as one for 'Bridges', and has then used the proceeds therefrom for general road purposes. Complainant further charges that such administrative device so adopted by said board was fraudulently devised to deprive complainant of its rights under the law to its lawful share of ad valorem tax collection as herein above set out; that defendant's continuous course of conduct in the use of the taxes so levied and collected during the years mentioned demonstrates the intent of the said board of supervisors to deprive complainant of its said right; and that defendant should be held by this Court to have done that which the law required it to do, towit: that it has made its annual levy each year under the mandatory provisions of the statute referred to.''

Inasmuch as the appellee ignored the notice to it from the Board of Mayor and Aldermen of appellant for the years involved in the suit, demand was made upon it, by

the municipality through its attorney, for payment of the amounts claimed. A copy of this demand is made an exhibit to the original bill, and demands payment for the years 1940, 1941, 1942, 1943, 1944 and 1945. The resolution of appellant's municipal authorities on which this demand is predicated, contains the following: "The Town of Crystal Springs will claim for the fiscal year 1928-29 and each year thereafter one-half of the ad valorem tax assessed or collected by said Board of Supervisors for road purposes on property in the Town of Crystal Springs; said town being a municipality which works its streets under municipal authority and at the expense of the municipal treasury". As stated, the county paid for the years prior to 1940, but the original bill is silent as to whether or not the ad valorem taxes for such prior years were for bridges only, for bridges and roads, or for roads only.

It is complained that although appellee's board of supervisors have had an amply reasonable time either to approve or disapprove such demand, it has failed and still fails to take any action with reference thereto. Wherefore, this suit was brought for the amounts covered by the aforesaid demand. But the prayer of the bill of complaint, without any demand having been made therefor, also asks payment of an additional $4,206.19 as due appellants by appellee for the year 1946-47, as to which the levy is not an exhibit. However, the original bill alleges that the levy was for "roads and bridges as authorized by Section 9880, Code of 1942", apparently quoted from the minutes of the board of supervisors.

Appellee filed a general demurrer on the ground that the original bill states (1) no cause of action; (2) no ground of equity jurisdiction; (3) if complainant is entitled to any remedy, it has a plain, adequate and complete remedy at law; (4) the bill shows on its face that as to all of the taxes levied for the years from 1940 to 1945, inclusive, the taxes were levied solely for bridge

purposes, and were not subject to division with municipalities, and (5) as to the levy made in October 1946 for the fiscal year 1946-47, no demand on the County had been made therefor; and for other causes to be shown at the hearing.

As stated, supra, this demurrer was sustained, and appellant, as complainant, having declined to amend its original bill, the same was dismissed. From this decree the case was appealed here on only one assignment of error: "The court erred in sustaining a general demurrer to and in dismissing appellant's bill of complaint."

The contention of appellant, when resolved to its simplest elements, seems to be that, although a county levy was made for bridge purposes only, a qualified municipality can participate fifty percent in the funds derived therefrom, where the county misapplies such levies or diverts them to another purpose than bridges, and the act of the board of supervisors in so doing constitutes fraud upon such municipality.

The board of supervisors is a constitutional board. It has certain powers of taxation. The Legislature by Section 8357, Code 1942, provided that the board of supervisors may raise funds for working, constructing, and maintaining public roads or public bridges by a commutation tax and by an ad valorem tax on all assessed taxable property in the county or supervisor's district or districts, or by a bond issue, or by any or all of said methods. Section 8358 directs that the board shall levy annually a tax upon the taxable property of such county to be used for road and bridge purposes, and so forth. Section 8360 authorizes the board of supervisors, in its discretion, to levy annually an ad valorem tax on all taxable property of the county to be used for constructing and maintaining all bridges and culverts. Section 9880 states that the board, in addition to the general county levy contained in Section 9879, may impose a

county-wide levy or levies for the "maintenance and/ or construction of roads and bridges" not to exceed seven mills in any one year.

Section 8367 directs that "One-half of all ad valorem taxes collected by or for a county or a separate or a special road district on property within a municipality (the streets of which are worked at the expense of the municipal treasury, or worked by municipal authority) for road purposes of such county or district, not including taxes for the purposes of paying bonds issued for road purposes or the interest thereon or for creating a sinking fund for retiring the same, shall be paid over to the treasurer of such municipality for said municipality."

It is to be noted that the statute last quoted commands that "One-half of all ad valorem taxes collected by or for a county . . . on property within a municipality (the streets of which are worked at the expense of the municipal treasury, or worked by municipal authority) for road purposes, (with certain exceptions not involved here) shall be paid over to the treasurer of such municipality for said municipality. In the case at bar no ad valorem taxes at all were collected for the years included in the claim made to the board by the municipality. Appellant contends that since it was mandatory that such an assessment be made by the county, the levy of assessment and collection of taxes for bridges should be treated as a collection for roads, on the apparent theory that equity will regard that as done which ought to have been done.

We are not, however, in the case at bar, confronted with the problem of what the board ought to have done. Our sole concern, we have concluded, is what was and was not done. As a corollary, it therefore follows that even if the board were derelict in the discharge of a duty to levy for road purposes, they did not do so, and since the levy for bridges was duly made, as the law authorized, and in the manner required by the

statutes, it was a levy for bridges only. Appellant cites, however, Gully v. Attala County, 165 Miss. 86, 145 So. 907, wherein this Court held that bridges are a part of roads. But, we have never held, and cannot hold, that roads are a part of bridges. The fact remains that no taxes were levied or collected by the county for road purposes in view of the statutes as read together, and we have no power by judicial decision to transmute a levy for bridge purposes into a levy for road purposes. The board, however, had the original authority to levy for both purposes, and either failed or neglected to levy for road purposes, to which levy alone could the municipality look for refund of one-half of ad valorem taxes collected. The suit at bar presents no right, therefore, of the municipality on such basis as set out in the original bill on this phase of the case. If the board owed a mandatory duty to levy taxes, they failed or neglected to perform their duty, and whatever the remedy and procedure in such case may be, it is not the one elected to be sought by appellant here, in our judgment. We are not confronted here with a suit by a taxpayer, or a proper state officer, for dereliction of duty, if such be possible, as to which we express no opinion in this case.

It seems to be the further contention of appellant that since, according to the averments of the original bill, the board set the bridge levies up in separate "Bridge Funds" in the county books, except for 1945, but that "such funds were used for general road purposes along with other road funds, indiscriminately, and were not used exclusively for the purpose indicated by the literal words of the levy", such procedure, it is claimed, supports its charge of fraud against the county, and evidenced a pretext and device by which fraudulently to deprive the municipality of its share of road funds. Let it be remembered here that the statute uses the word "collected" in referring to the road funds derived from taxation, for such purpose in the munici-

pality. There were no such funds collected, and we cannot agree with appellant that the mere unlawful use of bridge funds, if we take the allegations of the original bill to be true on demurrer as we are required to do, cannot be construed as depriving appellant of its share of road funds never levied or assessed; or entitle it to a share of bridge taxes lawfully assessed and collected. The principle would be the same if the board illegally diverted the funds to schools, or salaries, or any other purpose except bridges and culverts.

As stated, we are not here called on to pass upon what remedies exist for proceedings against boards of supervisors, or the individual members thereof, where money in one fund is illegally diverted to another, and we do not do so. We simply hold that mere illegal diversion of bridge funds to other county purposes, even roads, cannot be successfully argued to be a fraud against a municipality entitled to share only in road funds collected by an ad valorem tax levied on property within the corporate limits.

As far as the board actually acted by its levy for bridges it was authorized by statute to do so. If it should have also made a levy for roads, and did not do so, that is something else again, and what procedure should be taken for failure so to do, or for diversion of the funds later from their statutory purpose, to another, would not authorize us to call a bridge levy a road collection, or to hold that a fraudulent purpose against appellant was established thereby.

In the case of Panola County v. Town of Sardis, 171 Miss. 490, 157 So. 579, 581, the opinion of this Court said: "The municipality filed a cross-appeal, and assigned as error that the court below erred in not allowing one-half of the bridge funds collected under the bridge separate levy for each of the years from 1920 to 1932, inclusive. The board levied an ad valorem road tax for each of the said districts, and in the same

order levied a separate levy for bridge purposes throughout the county." Furthermore, it was said, "it is manifest that the part last quoted was intended to provide that where the board levied a tax for bridge purposes, such tax could only be used for the purpose of building bridges and culverts and for no other purpose, in the absence of an enabling statute authorizing the board to use the funds for some other purpose. It was not the legislative purpose, in authorizing this to be done under this chapter, to give the municipality one-half of this fund. The provisions of chapter 232, laws 1920, were intended to apply to funds raised for road purposes, but not for bridges, where the bridges were maintained by a fund levied under the provisions last quoted." In passing on the cross-appeal of the Town of Sardis on this point the opinion of this Court said: "The judgment on cross-appeal was correct."

It is argued by appellee that Copiah County's failure to levy road taxes was due to sufficient revenue for road purposes derived from the State because of gasoline and motor vehicle taxes, and from the latter collected by the County. Whether this be true or not, we have no way of telling from the record, but the original bill does aver that for 1946-47 the County did make a levy for road and bridge purposes. However, in our judgment, it is of no particular importance here, since the inescapable and irrefutable fact is that for the years of the claim presented to the supervisors there was no money collected for road purposes or levy made therefor, and we think the allegations of the bill before us do not make charges sufficient to establish fraud even if proven to be true. The value of the argument that the County had sufficient revenue for road purposes from other sources, causing them not to levy an ad valorem road tax would be, if true, to further negative the charge against the board of supervisors of conceiving a fraudulent intent and using a fraudulent device to deprive

the town of Crystal Springs of road taxes never collected. However, this point was raised by argument only, and does not appear in the record. Nevertheless, inasmuch as the county never levied a road tax, never collected any funds from such a tax, if this were a deprivation for the city, it was also a deprivation, ipso facto, of receipt by the county itself of such revenue. It would, therefore, be not unreasonable to infer that the improper use of bridge funds, as charged in the original bill, for road purposes was due to a deficiency of road funds, and not to a fraudulent scheme to defraud the municipality. The countervailing contention that this situation occurred annually during the period involved, while of some force, is not powerful enough to overcome the plain fact that the county collected no road funds either in the Town of Crystal Springs or in areas of the county outside of its corporate limits. It is to be further borne in mind that the original bill does not set forth how many bridges there are in Copiah County, their nature, cost of construction and maintenance, so that we do not have any basis of comparison between the bridge levies and the bridge expenditures, which might have some bearing, possibly, on the issue of fraudulent intent, and the absence of such data from the averments of the bill may be construable, pro tanto, as militating against its sufficiency in charging fraud against the county. Furthermore, the bill does not undertake specifically to give any information as to the expenditures for road purposes out of the bridge tax collections, which the county records should reveal.

As to the claim of $4,206.19 for the year 1946, it was never presented to the board of supervisors for payment or rejection, and hence, under the statute the chancery court was without jurisdiction thereof, and so we are. We do not, therefore, deal with that claim here.

For the reasons stated, we are of the opinion that the Chancellor was correct in sustaining the general demurrer, subject to our observation in the last preceding paragraph, and the decree will be and is accordingly affirmed with such modification.

Affirmed as modified.